IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

No. 22-4601

———————————

UNITED STATES OF AMERICA,

*Appellee*,

v.

ASHLEY NICHOLE KOLHOFF,

*Appellant*.

———————————

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Leonie M. Brinkema, District Judge*

———————————

BRIEF OF THE UNITED STATES

———————————

Jessica D. Aber
United States Attorney

Seth M. Schlessinger
Assistant United States Attorney

Jacqueline R. Bechara
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities ...........................................................................iii-vi

Introduction .........................................................................................1

Issue Presented ...................................................................................2

Statement of the Case..........................................................................2

    A.    The defendant registers an account with the Rapey.su website as user "█████████," takes close-up photographs of █████████ 's genitals and anus, and sends them to numerous other users. ....................................................................................2

    B.    The defendant is charged and arrested, proceeds to a bench trial, and is convicted. ..........................................................................3

Summary of Argument .......................................................................5

Argument.............................................................................................6

The images supporting defendant's convictions are plainly "lascivious exhibitions."................................................................................7

    A.    *Courtade* controls this case and confirms that the images at issue are "lascivious exhibitions."........................................10

        1.   The photographs of █████████ are lascivious exhibitions under *Courtade*. ..........................................13

        2.   The defendant's arguments to the contrary lack merit.................15

    B.    The Court should not apply *Hillie*, but even under its outlier standard, the images in this case are lascivious exhibitions. ............17

        1.   *Hillie* misconstrues Supreme Court precedent and relies on a defective rejection of *Dost*.............................................18

i

2.  *Hillie* is inconsistent with this Court's precedent. .......................22

3.  Even under *Hillie*, the photographs of ██████████
    ██████  are lascivious exhibitions..............................................24

Conclusion ........................................................................................26

Statement Regarding Oral Argument ....................................................27

Certificate of Compliance ........................................................................27

**Table of Authorities**

**Page**

**Cases**

*Miller v. California*,
413 U.S. 15 (1973)........................................................................19

*New York v. Ferber*,
458 U.S. 747 (1982)......................................................................18

*United States v. 12 200-Foot Reels of Super 8mm. Film*,
413 U.S. 123 (1973)......................................................................19

*United States v. Al-Awadi*,
873 F.3d 592 (7th Cir. 2017) .......................................................12

*United States v. Amirault*,
173 F.3d 28 (1st Cir. 1999)............................................................9

*United States v. Arvin*,
900 F.2d 1385 (9th Cir. 1990) .......................................................7

*United States v. Brown*,
579 F.3d 672 (6th Cir. 2009) .........................................................9

*United States v. Burleson*,
815 F.3d 170 (4th Cir. 2016) .......................................................15

*United States v. Collins*,
415 F.3d 304 (4th Cir. 2005) .......................................................16

*United States v. Courtade*,
929 F.3d 186 (4th Cir. 2019) ................................................ *passim*

*United States v. Devine*,
40 F.4th 139 (4th Cir. 2022).........................................................8

*United States v. Dost*,
636 F. Supp. 828 (S.D. Cal. 1986) ........................................ *passim*

*United States v. Frabizio*,

    459 F.3d 80 (1st Cir. 2006)................................................................7

*United States v. Fugit*,

    703 F.3d 248 (4th Cir. 2012) ..........................................................15

*United States v. Hillie*,

    39 F.4th 674 (D.C. Cir. 2022)................................................. *passim*

*United States v. Holmes*,

    814 F.3d 1246 (11th Cir. 2016) .......................................................13

*United States v. Horn*,

    187 F.3d 781 (8th Cir. 1999) ...........................................................21

*United States v. Isabella*,

    918 F.3d 816 (10th Cir. 2019) ...........................................................9

*United States v. Knox*,

    32 F.3d 733 (3d Cir. 1994) ..............................................................11

*United States v. Lowe*,

    65 F.3d 1137 (4th Cir. 1995) .............................................................8

*United States v. Perkins*,

    850 F.3d 1109 (9th Cir. 2017) ...........................................................9

*United States v. Petroske*,

    928 F.3d 767 (8th Cir. 2019) ........................................................7, 9

*United States v. Price*,

    775 F.3d 828 (7th Cir. 2014) .............................................................9

*United States v. Rivera*,

    546 F.3d 245 (2d Cir. 2008) ..............................................................9

*United States v. Schuster*,

    706 F.3d 800 (7th Cir. 2013) .............................................................7

*United States v. Steen*,

    634 F.3d 822 (5th Cir. 2011) ........................................................9, 12

*United States v. Villard*,

    885 F.2d 117 (3d Cir. 1989) ....................................................................9, 21

*United States v. Wiegand*,

    812 F.2d 1239 (9th Cir. 1987) ........................................... 12, 21, 22

*United States v. Williams*,

    553 U.S. 285 (2008)..........................................................................21

*United States v. Wolf*,

    890 F.2d 241 (10th Cir. 1989) .......................................................21

*United States v. X-Citement Video, Inc.*,

    513 U.S. 64 (1994)............................................................................20

**Statutes**

Title 18, United.States.Code, Section 1462 ....................................................19

Title 18, United States Code, Section 2251 ......................................................7

Title 18, United States Code, Section 2251(a)................................................4, 7

Title 18, United States Code, Section 2251(a) and (e) ....................................7

Title 18, United States Code, Section 2252 ......................................................7

Title 18, United.States.Code, Section 2252(a)(2)...........................................4, 7

Title 18, United States Code, Sections 2252(a)(2) and (b)(1) ................................7

Title 18, United.States.Code, Section 2252(a)(4)(B) ...................................... 10, 15

Title, 18, United.States.Code, Section 2256(2)(A)........................................... 10, 18

Title 18, United.States.Code, Section 2256(2)(A)(v) .................................... *passim*

Title 19,  United.States.Code, Section 1305(a)............................................19

Title 28, United.States.Code, Section 2255 .................................................... 10, 15

**Other Authorities**

H.R. Rep. No. 98-536, at 2 (1983)..........................................................................20

Pornography Victim Assistance Act of 2018,

    Pub. L. No. 115-299,  Section 7(c), 132 Stat. 4383 (2018)...........................8

Protection of Children Against Sexual Exploitation Act of 1977,

    Pub. L. No. 95-225, Section 2(a), 92 Stat. 7e (1978) ...................................8

**Introduction**

In September 2020, defendant Ashley Nichole Kolhoff was ████████
████████.  Defendant created an account at "Rapey.su," a website
dedicated to the sexual exploitation of children, including the production and
dissemination of child pornography.  Adopting the moniker "████████" on the
Rapey website, the defendant produced sexually explicit images of ████████
████, including close-up photographs of ████████'s genitals and anus, and
distributed them to numerous other Rapey users.

The defendant was arrested and ultimately charged with one count of
production and one count of distribution of child pornography.  The matter
proceeded to a bench trial, at the conclusion of which the district court returned a
verdict of guilty on both counts.  The court later sentenced the defendant to the
mandatory-minimum term of fifteen years' imprisonment.

On appeal, the defendant argues only that the photographs that the defendant
took of ████████'s genitals and anus did not contain "lascivious
exhibition[s]" of those regions within the meaning of 18 U.S.C. § 2256(2)(A)(v).
Because this claim lacks merit, the Court should affirm the defendant's convictions
and sentence.

1

## Issue Presented

Do the close-up photographs of ████████████████████'s genitals

and anus, including ones where the defendant used her hand to spread apart the

victim's labia or expose her anus, constitute "lascivious exhibition[s] of the anus,

genitals or pubic area" of ████████████ under 18 U.S.C. § 2256(2)(A)(v)?

### Statement of the Case

**A.    The defendant registers an account with the Rapey.su
       website as user "████████," takes close-up photographs
       of ████████████'s genitals and anus, and sends
       them to numerous other users.**

Rapey.su was a website dedicated to, among other goals, child exploitation,

including the production and dissemination of child pornography.[1]  On September

11, 2020, the defendant registered for an account on the Rapey website as the user

"████████."  JA51.  At that time, the defendant was living in Port Clinton, Ohio,

████████████████████.  JA94-96.

Shortly after registering her account, the defendant posted a message in the

website's "Rapey misogyny" public forum with the subject line "Who wants me

and ████?"  JA54, JA419.  The body of the defendant's message read "Would

---

[1] The administrator of the website lived in Catlett, Virginia and operated the
website from Catlett (including causing backups of the data associated with the
website to be made to computers in his home) during the period of the events
underlying this prosecution.  JA54, JA85.

2

anyone want me and ███████████████?" JA54, JA419.  Numerous Rapey

users responded expressing interest.  JA419-431.  On the same day, the defendant

posted a separate message in another Rapey forum ("Femoid discussion") titled

"███████ is beautiful" and asking, in the body of the message, "Anyone want

pics?"  JA55, JA432.  Again, various Rapey users (including user "NotJ")

responded by answering affirmatively or seeking to engage in direct message

exchanges with the defendant.  JA432-456.

Thereafter, in separate message exchanges occurring over the Rapey website

with "NotJ" and other Rapey users between September 11, 2020 and September

13, 2020, the defendant sent photographs she had taken of ████████████.

These photographs included close-up photographs of ███████████'s genitals and

anus, in which the defendant used her hand to spread apart ███████████'s labia or

to expose ████████████'s anus to the camera as much as possible.  JA67, JA69,

JA70, JA72, JA74, JA76, JA77; <u>see also</u> SA38-39, SA50, SA56, SA62, SA67,

SA70, SA77, SA80, SA84.

### B.   The defendant is charged and arrested, proceeds to a bench trial, and is convicted.

The defendant was arrested by agents of Homeland Security Investigations

at her home in Port Clinton on June 9, 2021.  JA107.  The arresting agent noted

that freckles or moles visible on the adult fingers in the images depicting ███

████████████'s labia and anus were consistent with blemishes on the

defendant's fingers. JA99.

The defendant was initially charged by criminal complaint with one count of

production of child pornography, in violation of 18 U.S.C. § 2251(a). JA382.

Subsequently, a federal grand jury returned an indictment charging the defendant

with one count of production of child pornography and one count of distribution of

child pornography, in violation of 18 U.S.C. § 2252(a)(2). JA17. The defendant

later waived her right to a jury trial, and the matter proceeded to a bench trial

beginning on March 2, 2022. JA8, JA20.

At trial, the defendant focused primarily on her contention that she could not

have formed the mens rea necessary to have committed the charged offenses. In

particular, the defendant presented the testimony of a clinical psychologist who

testified that the defendant's activity on Rapey likely occurred while the defendant

was "dissociating," JA 144, and further that her activity was likely the result of the

defendant going "down the rabbit hole" in a misguided attempt to fight child

exploitation, JA125, JA145-46, JA163, JA174. The government presented

evidence that the defendant was of entirely sound mind during the period of her

activity on Rapey, including the testimony of the government's own psychologist,

who examined the defendant and concluded that the defendant had significantly

malingered symptoms in her interactions with the defense psychologist.  JA232–233.

At the conclusion of the evidence, the district court directed the parties to submit briefing addressing the factual disputes highlighted at trial.  JA293.  After the parties submitted the required briefing, the district court held a hearing on April 12, 2022, at which the court announced its verdict finding the defendant guilty as to both counts in the indictment.  JA334.  The defendant was subsequently sentenced to the mandatory-minimum term of fifteen years' imprisonment.  JA361.

This appeal followed.

## Summary of Argument

The defendant argues that the images she produced and distributed are not "lascivious exhibition[s]" as defined by 18 U.S.C. § 2256(2)(A)(v), relying primarily on the recent divided decision in *United States v. Hillie*, 39 F.4th 674 (D.C. Cir. 2022).  However, the close-up photographs of ███████████'s genitals and anus being spread apart by the defendant's fingers to achieve the greatest possible exposure to the camera are plainly "lascivious" under this Court's precedent in *United States v. Courtade,* 929 F.3d 186 (4th Cir. 2019).

Moreover, *Hillie* is neither binding nor persuasive, and the Court should reject the defendant's invitation to adopt the majority opinion's flawed standard. *Hillie* misapplies relevant Supreme Court precedents and legislative history, adopts

5

an idiosyncratic view that puts it at odds with every other circuit to address the question, and yields a result that unnecessarily and unreasonably limits the scope of the federal child pornography statutes. *Hillie* is also entirely irreconcilable with this Court's existing precedential decision in *Courtade*. Further, *Hillie's* distinctive factual scenario involved the surreptitious recording of older children in the bathroom performing routine activities—not the defendant's physical manipulation of ████████'s genitals in order to create sexually explicit images for a website dedicated to the sexual exploitation of children. Therefore, the Court should reject *Hillie* and adhere to its existing precedent. Finally, even under the *Hillie* standard, the images forming the basis for the defendant's convictions plainly constitute "lascivious exhibition[s]."

Accordingly, this Court should affirm the judgment.

## Argument

The defendant's sole claim on appeal is that, as a matter of law, none of the images of ████████ that she produced and distributed to other users were "lascivious" within the meaning of 18 U.S.C. § 2256(2)(A)(v). Because this claim disregards this Court's binding precedent and relies instead on a misapplication of out-of-Circuit precedent that is neither binding nor persuasive, this Court should reject the argument.

**The images supporting defendant's convictions are plainly "lascivious exhibitions."**

The district court convicted the defendant at trial of sexual exploitation of children (alternatively described as production of child pornography), in violation of 18 U.S.C. § 2251(a) and (e), and the distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). JA 336, JA371. To prove the former offense, the government was required to prove beyond a reasonable doubt that the defendant employed, used, or coerced a minor to engage in "sexually explicit conduct" for the purpose of producing a visual depiction of such conduct. *See* 18 U.S.C. § 2251(a); JA17 (indictment). To prove the latter offense, the government was required similarly to prove that the defendant distributed at least one visual depiction of a minor engaged in "sexually explicit conduct." *See* 18 U.S.C. § 2252(a)(2); JA18. "Sexually explicit conduct," as used in both §§ 2251 and 2252, is further defined by statute to include "the lascivious exhibition of the anus, genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A)(v).

Whether a particular visual depiction includes a "lascivious exhibition" of the anus, genitals or public area is a question of fact. *See, e.g.*, *United States v. Petroske*, 928 F.3d 767, 773 (8th Cir. 2019); *United States v. Schuster*, 706 F.3d 800, 806 (7th Cir. 2013) (describing the issue as "an intensely fact-bound question"); *United States v. Frabizio*, 459 F.3d 80, 85 (1st Cir. 2006); *United States v. Arvin*, 900 F.2d 1385, 1390 (9th Cir. 1990); *cf. United States v. Courtade*,

7

929 F.3d 186, 191 (4th Cir. 2019) (analyzing whether a given visual depiction was "lascivious" as part of an inquiry into "factual innocence").  As with any challenge to the sufficiency of the evidence, this Court must view the evidence presented at trial in the light most favorable to the government, and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *United States v. Devine*, 40 F.4th 139, 146 (4th Cir. 2022) (citing *United States v. Lowe*, 65 F.3d 1137, 1142 (4th Cir. 1995)).  Thus, the Court here must uphold the defendant's convictions if any rational trier of fact could find the images at issue to be "lascivious."

In articulating standards intended to guide a determination whether a particular exhibition in a visual depiction is "lascivious," many courts have considered the six factors first enumerated in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986).  The *Dost* factors are: (1) whether the depiction's focal point is the minor's genitalia or pubic area;[2] (2) whether the depiction's setting appears to be sexually inviting or suggestive, i.e., in a place or pose generally associated

---

[2] Initially, Congress defined "sexually explicit conduct," as relevant here, to include the "lewd exhibition of the genitals or pubic area of any person." Protection of Children Against Sexual Exploitation Act of 1977, Pub. L. No. 95-225, § 2(a), 92 Stat. 7, 8 (1978).  Well after the decision in *Dost*, Congress expanded the statutory definition of "sexually explicit conduct" in 2018 to include the lascivious exhibition of a minor's anus.  Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299, § 7(c), 132 Stat. 4383, 4389 (2018).

with sexual activity; (3) whether the minor is depicted in an unnatural pose, or inappropriate attire, considering the age of the child; (4) whether the minor is fully or partially clothed or nude; (5) whether the visual depiction suggests sexual coyness or an apparent willingness to engage in sexual activity; and (6) whether the depiction appears to have been intended or designed to elicit a sexual response in the viewer. *Dost*, 636 F. Supp. at 832.

Seven courts of appeals have followed the *Dost* factors in determining whether an exhibition is "lascivious." *See United States v. Rivera*, 546 F.3d 245, 252–53 (2d Cir. 2008); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989); *United States v. Steen*, 634 F.3d 822, 827–28 (5th Cir. 2011); *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009); *Petroske*, 928 F.3d at 774 (8th Cir. 2019); *United States v. Perkins*, 850 F.3d 1109, 1121 (9th Cir. 2017); *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019). Two other courts of appeals have upheld consideration of the *Dost* factors depending on the facts of a particular case. *See United States v. Price*, 775 F.3d 828, 839–40 (7th Cir. 2014); *United States v. Amirault*, 173 F.3d 28, 31–32 (1st Cir. 1999). This Court, while recognizing the use of the *Dost* factors by many other courts, has neither expressly adopted nor rejected *Dost*'s interpretation of the term "lascivious exhibition." *See Courtade*, 929 F.3d at 192. The D.C. Circuit stands alone among the courts of appeals in having rejected the *Dost* factors and holding that the "lascivious exhibition of the

9

anus, genitals, or pubic area of any person" means that "the minor displayed his or her anus, genitalia, or pubic area in a manner connoting that the minor, or any person or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity." 39 F.4th at 685.[3] The images at issue in this case are clearly "lascivious exhibitions."

### A.     *Courtade* controls this case and confirms that the images at issue are "lascivious exhibitions."

The Court can resolve this case simply by applying its recent precedent in *Courtade*. In that case, the defendant moved under 28 U.S.C § 2255 to vacate his conviction for possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). *Courtade*, 929 F.3d at 189. He claimed that he was actually innocent of the offense because the video at issue did not "show a minor engaging in 'sexually explicit conduct' as defined in 18 U.S.C. § 2256(2)(A)." *Id.* This Court specifically considered whether the video depicted a "lascivious exhibition of the anus, genitals, or pubic area" under § 2256(2)(A). *Id.* at 191.

---

[3] Contrary to the defendant's characterization, *Hillie* did not hold that § 2256(2)(A)(v) requires that "the 'exhibition of the anus, genitals, or pubic area' must be performed in a manner that connotes the commission of *some* sexual act, either actual or simulated." Def. Br. 21. The defendant's formulation would impermissibly circumscribe the definition of "lascivious exhibition" beyond the holding in *Hillie*.

The visual depiction at issue was a 24-minute video of a minor child in the shower. *Id.* at 188. During the video, the minor undresses and enters the shower, closing the shower curtain behind her. *Id.* The defendant then hands the camera to the showering minor and instructs her to put it on the shower floor, under the ruse that this was necessary "to see if the camera was waterproof." *Id.* The minor complies and then hands the camera back to the defendant, who places the camera on the bathroom counter. *Id.* The camera then captures the minor exiting the shower, seeing the camera on the countertop, and finally crawling out of view of the camera below the countertop. *Id.* The resulting video displayed the minor's breasts and genitals "at various points." *Id.*

This Court readily determined that the video constituted a "lascivious exhibition." *Id.* at 192–94. The Court explained that "[t]he plain meaning of 'lascivious exhibition' require[d] that [it] ask whether the video depict[ed the minor's] genitals or pubic area 'in order to excite lustfulness or sexual stimulation in the viewer.'" *Id.* at 192 (quoting *United States v. Knox*, 32 F.3d 733, 745 (3d Cir. 1994)). The Court acknowledged that "[m]any courts" have considered the *Dost* factors in "applying the term 'lascivious exhibition,'" but determined that it "need not venture into the thicket surrounding the *Dost* factors" because it could "dispose of this case based on the objective characteristics of the video alone." *Id.*

11

The Court observed that, "[f]ar from depicting merely a girl showering, drying off, and getting dressed, the video contain[ed] extensive nudity—including shots of her breasts and genitals—that [was] entirely the product of an adult man's deceit, manipulation, and direction as captured in the video." *Id.* The Court further noted that the camera had been angled "in such a way as to capture even more footage of [the minor victim's] breasts and genitals." *Id.* at 193. The Court concluded that the video "objectively depict[ed] a 'lascivious exhibition' because the images and audio—revealing deceit, manipulation, and the careful directing and filming of a young girl resulting in footage of her breasts and genitals—ma[d]e clear that the video's purpose was to excite lust or arouse sexual desire in the viewer." *Id.* at 193.

Thus, *Courtade* held that a "lascivious" exhibition is one that "depicts [a minor's] genitals or pubic area in order to excite lustfulness or sexual stimulation in the viewer." 929 F.3d at 192 (internal quotation omitted). This decision is consistent with every other circuit that had addressed the meaning of lascivious exhibition previously. *See Steen*, 634 F.3d at 828; *see also United States v. Al-Awadi*, 873 F.3d 592, 600 (7th Cir. 2017) ("[A] lascivious exhibition 'is one that calls attention to the genitals or pubic area for the purpose of eliciting a sexual response in the viewer.'") (citation omitted); *United States v. Wiegand*, 812 F.2d 1239, 1244 (9th Cir. 1987) ("The picture of a child 'engaged in sexually explicit

12

conduct' . . . is a picture of a child's sex organs displayed lasciviously–that is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur."); *United States v. Holmes*, 814 F.3d 1246, 1251 (11th Cir. 2016) ("We have previously defined 'lascivious exhibition' as one that 'excites sexual desires or is salacious.'") (citation omitted).

> ### 1.    The photographs of ██████████████ are lascivious exhibitions under *Courtade*.

The photographs supporting the defendant's convictions easily satisfy *Courtade*'s construction of § 2256(2)(A)(v). Government's Exhibit 208[4] is a conversation held on the Rapey website between the defendant (user "██████████") and the Rapey user "NotJ." SA1-36. The conversation included "NotJ" both describing the sexual acts he wanted to perform on both the defendant and ██████████████ (to which the defendant readily agreed, e.g., SA25 ("Of course you can fuck her in the car if you'd like")), and requesting photographs of ██████████████ on multiple occasions. E.g., SA26 ("I want to see a lot of the little slut."); SA27 ("May I see her" in response to the defendant's comment "I just ██████████████"); SA30 ("more"). The defendant responded by sending, among other photographs, two separate photographs consisting of close-up depictions of

---

[4] All of the government exhibits described herein were admitted at trial. JA50.

██████'s genitals.  SA30.  In each photograph, the defendant is using her

fingers to spread apart ██████'s labia.  SA30; SA38; SA39.

In the same conversation with "NotJ," the defendant transmitted another

message containing, among others, a photograph of ██████ in which ██

██ is lying prone on what appears to be a bed and the defendant is using her

fingers to spread ██████'s buttocks apart in order to expose the child's anus to the

close-up camera.  SA32; SA42.  The defendant further distributed the above-

referenced photographs to other Rapey users as well.  The online conversations in

which these distributions occurred included, among others, those reflected in

Government's Exhibit 211, SA43; Government's Exhibit 212, SA51;

Government's Exhibit 213, SA57; and Government's Exhibit 216, SA68.

It is surpassingly clear that these photographs of ██████'s

genitals, anus and public area qualify as depictions intended "to excite lustfulness

or sexual stimulation in the viewer," as *Courtade* interpreted the statutory term

"lascivious."  The defendant took the photographs in response to other Rapey

users' sexual overtures toward defendant and ██████ and requests for pictures

of the child.  The defendant strategically positioned ██████ and manipulated

██████'s body to create visual depictions highlighting the girl's genitals and

anus.  In this context, any rational trier of fact could have found the images to

constitute lascivious exhibitions of ██████'s anus or genitals.  *Cf. Courtade*, 929

14

F.3d at 193 (concluding that the video "depict[ed] a 'lascivious exhibition' because the images and audio—revealing deceit, manipulation, and the careful directing and filming of a young girl resulting in footage of her breasts and genitals—make clear that the video's purpose was to excite lust or arouse sexual desire in the viewer").

### 2.    The defendant's arguments to the contrary lack merit.

The defendant's attempts to evade the binding effect of *Courtade* are unconvincing.  First, the defendant argues that *Courtade* is not binding because the question of statutory construction was presented there in the context of an appeal from the denial of a motion to vacate conviction pursuant to 28 U.S.C. § 2255, rather than on a direct appeal from a conviction.  Def. Br. 23 (attempting to distinguish between "factual innocence" and "legal insufficiency").  But this distinction is meaningless.  *Courtade* reasoned that a claim of "actual innocence" may properly "turn[] on issues of statutory construction."  929 F.3d at 190 (citing *United States v. Fugit*, 703 F.3d 248, 253-54 (4th Cir. 2012) and *United States v. Burleson*, 815 F.3d 170, 176 (4th Cir. 2016)).  This Court made perfectly clear that "*Courtade*'s actual innocence claim turns ultimately on our interpretation of 18 U.S.C. § 2252(a)(4)(B), the statute of conviction," and ultimately that "[t]he question in this case is whether the video of Jane Doe depicts a 'lascivious exhibition of the anus, genitals or pubic area' under the statute."  929 F.3d at 191.

There is no difference between the statutory construction of 18 U.S.C.

§ 2256(2)(A)(v) conducted in *Courtade* and the statutory construction required on

direct appeal.

Second, the defendant faults this Court's interpretive methods, focusing on

brief references in *Courtade* to dictionary definitions of relevant statutory terms

and suggesting it would be inappropriate for this Court to apply *Courtade* to this

case in light of those references.  Def. Br. 23.  However, the defendant's

disapproval of a standard method of statutory construction does nothing, of course,

to diminish the binding effect of this Court's prior published decisions.  *See United

States v. Collins*, 415 F.3d 304, 311 (4th Cir. 2005) ("A decision of a panel of this

court becomes the law of the circuit and is binding on other panels unless it is

overruled by a subsequent en banc opinion of this court or a superseding contrary

decision of the Supreme Court.") (internal quotation omitted).

Third, the defendant argues that *Courtade* "seemed to recognize that courts

should only look to the four corners of the image or video, rather than to the

subjective intent of the creator, when deciding whether the image is 'lascivious.'"

Def. Br. 24.  But this is plainly incorrect.  Instead, *Courtade* recognized that the

defendant had argued "that his subjective intent or motive in creating the video is

irrelevant to our analysis, and that considering his intent would be at odds with the

statutory language and would raise concerns under the Due Process Clause and the

First Amendment," but concluded ultimately that "we need not venture into the thicket surrounding the *Dost* factors or define the parameters of any subjective-intent inquiry, because we can dispose of this case based on the objective characteristics of the video alone."  929 F.3d at 192.  Thus, this Court simply found it unnecessary to consider whether any subjective intent or other factors external to the image itself had any role in determining whether a visual depiction was "lascivious," precisely because the video at issue in *Courtade* was clearly "lascivious" without consideration of any external factors.   Moreover, in this case, the images are plainly lascivious *even if* the Court were to consider only the four corners of the images since they clearly depict an adult spreading apart █████████'s labia and anus in order to better display, and enhance the focus on, the victim's genitals.

### B.  The Court should not apply *Hillie*, but even under its outlier standard, the images in this case are lascivious exhibitions.

Defendant maintains that, under the standard set forth in *Hillie*, the images supporting the defendant's convictions are not lascivious exhibitions within the meaning of § 2256(2)(A)(v).  Def. Br. 21–22.  The Court should decline to apply *Hillie* because it misconstrues Supreme Court precedent, relies on a defective rejection of *Dost*, and is inconsistent with this Court's precedent.  In any event, even under *Hillie*, the photographs of ████████████████ constitute

lascivious exhibitions sufficient to support her convictions.

### 1. *Hillie* misconstrues Supreme Court precedent and relies on a defective rejection of *Dost*.

First, *Hillie* is not correct. At the outset, *Hillie* misinterpreted references in relevant Supreme Court opinions to the "hard core" of child pornography. For example, in *New York v. Ferber*, 458 U.S. 747 (1982), the Supreme Court upheld a New York statute that defined certain crimes related to visual representations of minors engaged in "sexual conduct." The New York statute defined "sexual conduct" similarly to 18 U.S.C. § 2256(2)(A)'s definition of "sexually explicit conduct" (including the "lewd exhibition of the genitals"). In concluding that the law was not unconstitutionally overbroad, the Supreme Court observed that "the reach of the statute [was] directed at the hard core of child pornography." *Ferber*, 458 U.S. at 773; *see also id.* at 761 (reasoning that a work which "contains serious literary, artistic, political, or scientific value may nevertheless embody the hardest

18

core of child pornography").[5]

*Hillie* misconstrued these passing references to the "hard core" of child pornography to require that a depiction of a child's anus, genitals or pubic area must be "hard core" to qualify as "lascivious." 39 F. 4th at 681, 682, 683 (ultimately finding evidence insufficient because "[t]here is certainly nothing that could be reasonably described as 'hard core,' sexually explicit conduct"). This reasoning fundamentally misunderstands the Supreme Court's cases, which simply observed that "lascivious exhibitions" of a child's genitals inherently constitute the "hard core" of child pornography (and that regulation of those exhibitions is therefore constitutionally permissible). The Supreme Court has never suggested that an exhibition is "lascivious" only if it meets some external "hard core"

---

[5] *Hillie* also cited other Supreme Court decisions using the phrase "hard core" in describing the conduct permissibly captured by obscenity statutes. *See, e.g.*, *Miller v. California*, 413 U.S. 15, 27 (1973) (holding, in a challenge to California's obscenity statute, that states can regulate obscene materials if "these materials depict or describe patently offensive 'hard core' sexual conduct specifically defined by the regulating state law"); *United States v. 12 200-Foot Reels of Super 8mm. Film*, 413 U.S. 123, 130 n.7 (1973) (commenting, in a challenge to the federal obscenity statute, 19 U.S.C. § 1305(a), that in the event of a vagueness challenge to "the words obscene, lewd, lascivious, filthy, indecent, or immoral as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462," the court was "prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific hard core sexual conduct given as examples in *Miller*" ). *Hillie* fails to explain why cases construing the regulation of material depicting adults should inform the reach of child pornography statutes.

standard.

*Hillie* is also incorrect because it depends on a flawed rejection of *Dost*. The *Hillie* court criticized *Dost* for interpreting Congress's 1984 replacement of "lewd" with "lascivious" in the federal child pornography statute as indicating a legislative effort to expand the coverage of child pornography laws, citing a subsequent Supreme Court decision observing that the terms are equivalent. *Hillie*, 39 F.4th at 686-87 (citing *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78–79 (1994)). But the legislative history makes clear that, when Congress acted, it intended to expand the scope of federal child pornography laws. *See* H.R. Rep. No. 98-536, at 2 (1983) (observing few prosecutions and convictions under the child pornography statutes then in force and concluding "[t]he few prosecutions under the Act indicate that the Protection of Children Against Sexual Exploitation Act requires some modification"). The Supreme Court's subsequent determination that "lewd" and "lascivious" are interchangeable does not alter that congressional intent.

*Hillie* also criticized *Dost* for suggesting that one factor to be considered in deciding whether an exhibition is "lascivious" is whether the depiction "is designed to elicit a sexual response in the viewer, albeit perhaps not the average viewer, but perhaps in the pedophile viewer." *Hillie*, 39 F.4th at 688 (quoting *Dost*, 636 F. Supp. at 832) (internal quotations omitted). *Hillie* suggested that this

20

factor inappropriately encourages examination of a defendant's subjective belief

regarding the lasciviousness of an image, contrary to *United States v. Williams*,

553 U.S. 285, 301 (2008).  Instead, multiple courts have recognized that this *Dost*

factor involves an examination of the visual depiction using an objective standard,

rather than an inquiry into a particular person's subjective reaction.  *See, e.g.*,

*United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989) ("We must, therefore,

look at the photograph, rather than the viewer."); *United States v. Wiegand*, 812

F.2d 1239, 1245 (9th Cir. 1987) (affirming *Dost* on direct appeal and noting that

"[p]rivate fantasies are not within the statute's ambit").

     *Hillie*'s conclusion that an exhibition is "lascivious" only if it is one in

which "the minor displayed his or her anus, genitalia, or pubic area in a manner

connoting that the minor, or any person or thing appearing with the minor in the

image, exhibits sexual desire or an inclination to engage in any type of sexual

activity," 39 F.4th at 685, suffers from another critical defect.  It is entirely

inappropriate to rest the lasciviousness determination exclusively on whether a

depiction creates a "connotation" of sexual desire or inclination toward sexual

activity on the part of the minor victim.  *See, e.g.*, *United States v. Horn*, 187 F.3d

781, 790 (8th Cir. 1999); *United States v. Wolf*, 890 F.2d 241, 246 (10th Cir. 1989)

(observing that a definition of "lascivious exhibition" that would "require the child

to exhibit lust, wantonness, sexual coyness or other inappropriate precocity . . .

21

would pervert both the language and the logic of the legislation and the case law");

*Wiegand*, 812 F.2d at 1244 ("[L]asciviousness is not a characteristic of the child

photographed but of the exhibition which the photographer sets up for an audience

that consists of himself or likeminded pedophiles.").

By its own terms, *Hillie* signifies that a depiction of a minor who is

incapable of exhibiting sexual desire or inclination toward sexual activity, such as

an infant, will never be "lascivious" unless another person or object also appears in

the image to supply the requisite connotation. Similarly, *Hillie* necessarily holds

that a depiction of a minor who is sleeping, unconscious, or otherwise

incapacitated can never be "lascivious." Likewise, *Hillie* suggests that a minor

whose genitals, anus or pubic area are exhibited in a depiction in which the minor

expresses an emotion other than sexual desire or inclination (for example, abject

fear or distress) can never be "lascivious." *Hillie* thus categorically excludes all

such visual depictions from the definition of a "lascivious exhibition," depriving

some of the most vulnerable minors of the protection of the federal child

pornography statutes. This result is obviously contrary both to the purpose of the

statute and to its reasonable interpretation.

### 2.    *Hillie* is inconsistent with this Court's precedent.

Moreover, this Court should reject *Hillie* because it is impossible to

reconcile with *Courtade*. In *Hillie*, the defendant was convicted of production and

possession of child pornography, arising out of his surreptitious recording of
minors using video cameras he had secretly installed in a minor's bedroom and in a
bathroom. 39 F.4th at 677. The first video, recorded in his girlfriend's daughter's
bedroom, involved the exposure of the minor's genitals for approximately nine
seconds, followed by the "intermittent" displays of the minor's pubic area (but not
her genitals) on various occasions during the remainder of the video. *Id.* at 678.
The second video, recorded in the bathroom, captured two minors using the toilet
but did not depict their genitals due to the position of the camera (in a ceiling vent
directly above the toilet). *Id.* However, the second video did capture one minor
cleaning her pubic area with a washcloth for approximately sixteen seconds. *Id.*
The court in *Hillie* concluded that there was insufficient evidence to support the
defendant's convictions because no rational trier of fact could find the conduct
depicted in the videos to be a "lascivious exhibition of the anus, genitals, or pubic
area of any person." *Id.* at 686. The court reasoned that nothing in the videos
"could be reasonably described as 'hard core,' sexually explicit conduct." *Id.*

In both *Courtade* and *Hillie*, the visual depictions at issue were videos of
minors recorded in rooms of a home (a bedroom and a bathroom) in which a
reasonable person would typically expect privacy. The videos in both cases were
captured surreptitiously through the deceitful acts of an adult cohabitant, and in
both cases, they recorded the minor victims engaged in behavior that reasonably

23

would be expected in a bedroom or bathroom (disrobing, showering, cleaning, using the toilet).  In *Hillie*, the D.C. Circuit reasoned that the videos were not lascivious exhibitions because, although the minor "disrobes and her nude body is shown, along with fleeting views of her pubic area, [she] never engages in any sexual conduct whatsoever, or any activity connoting a sex act." *Id.* at 686.  In *Courtade*, too, the video did not depict the minor engaging in "sexual conduct" or "activity connoting a sex act."  Yet this Court nevertheless concluded that the video was a lascivious exhibition because, "[f]ar from depicting merely a girl showering, drying off, and getting dressed, the video contain[ed] extensive nudity—including shots of her breasts and genitals—that [was] entirely the product of an adult man's deceit, manipulation, and direction." *Courtade*, 929 F.3d at 192.

It is impossible to reconcile the video this Court determined to be a "lascivious exhibition" in *Courtade* with the videos that the *Hillie* court concluded were not.  This Court's binding precedent in *Courtade* necessarily rejects the reasoning in *Hillie*.  Thus, the defendant's argument that the district court was required to apply *Hillie*'s interpretation of "lascivious exhibition" fails.

> **3.    Even under *Hillie*, the photographs of ███████ ████████ are lascivious exhibitions.**

Alternatively, even if the Court applies *Hillie*'s definition of "lascivious exhibition," the photographs of ███████████ satisfy that standard.  As detailed *supra*, the photographs include the defendant's fingers spreading apart ██

24

██████'s labia or buttocks to maximize the exposure of the child's genitals or anus to the camera. These images "connot[e] that … *any person* or thing appearing with the minor in the image, exhibits sexual desire or an inclination to engage in any type of sexual activity," and therefore qualify as "lascivious" even under *Hillie*'s flawed understanding of the term. This is so regardless of whether the context surrounding the production and distribution of the images (including the sexually explicit nature of the conversations in which they were exchanged, and the overall purpose of the Rapey website on which the conversations were had) is considered. Indeed, it is virtually impossible to conceive of any exhibition of a minor's genitals, anus or pubic area that would qualify as "lascivious" if the photographs created and distributed by the defendant do not.

## Conclusion

The close-up photographs of ███████████████ 's genitals and

anus easily qualify as "lascivious exhibitions" of those areas within the meaning of

18 U.S.C. § 2256(2)(A)(v).  Because sufficient evidence supports the defendant's

convictions, the Court should affirm.


Respectfully submitted,

Jessica D. Aber
United States Attorney


                            /s/

Seth M. Schlessinger
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 5,832 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
_____
Seth M. Schlessinger
Assistant United States Attorney
