**22-4601**

# United States Court of Appeals
## for the
# Fourth Circuit

UNITED STATES OF AMERICA,

*Plaintiff/Appellee,*

– v. –

ASHLEY NICOLE KOLHOFF,

*Defendant/Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

# REPLY BRIEF OF APPELLANT

CHRISTOPHER BRYAN AMOLSCH
LAW OFFICES OF
　CHRISTOPHER AMOLSCH
12005 Sunrise Valley Drive,
　Suite 200
Reston, Virginia  20191
(703) 969-2214

*Counsel for Appellee*

COUNSEL PRESS • VA – (804) 648-3664

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

REPLY ISSUES ....................................................................................................1

    I.    THIS COURT REVIEWS THE MEANING OF THE STATUTORY PHRASES "SEXUALLY EXPLICIT CONDUCT" AND "LASCIVIOUS EXHIBITION" *DE NOVO* ..................................................................................2

    II.    THE IMAGES ARE NOT "LASCIVIOUS" WITHIN THE MEANING OF CHILD PORNOGRAPHY STATUTES ....................3

        A.    The Court must begin with the plain language of 18 U.S.C. § 2256(2)(A) ....................................................................3

        B.    Elements Of The Offenses ......................................................3

        C.    The plain language of 18 U.S.C. § 2256(2)(A) is clear and unambiguous ................................................................4

        D.    The statutory term "lascivious exhibition" refers to the content of the visual depiction, not how that visual depiction is viewed or intended to be perceived ........................5

        E.    To be "lascivious" within the child pornography statutes, the video or image must depict the minor engaging in *some* sort of sexual conduct ...................................6

    III.    *DOST* IS FATALLY FLAWED ...........................................................8

    IV.    *COURTADE* IS NEITHER PRECEDENTIAL NOR BINDING ..................................................................................................9

CONCLUSION .....................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Bousley v. United States*,
  523 U.S. 614 (1998) ................................................................................... 9-10

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) ............................................................................................8

*Crespo v. Holder*,
  631 F.3d 130 (4th Cir. 2011) ............................................................................3

*House v. Bell*,
  547 U.S. 518 (2006) ........................................................................................10

*In re Total Realty Mgmt., LLC*,
  706 F.3d 245 (4th Cir. 2013) ............................................................................3

*Lee v. Norfolk S. Ry. Co.*,
  802 F.3d 626 (4th Cir. 2015) ............................................................................3

*Miller v. California*,
  413 U.S. 15 (1973) ................................................................................. 6, 8, 9

*New York v. Ferber*,
  458 U.S. 747 (1982) ..........................................................................................6

*United v. McCauley*,
  983 F.3d 690 (4th Cir. 2020) ..........................................................................13

*United States v. 12 200-Foot Reels of Super 8mm*,
  413 U.S. 123 (1973) ......................................................................................6, 9

*United States v. Courtade*,
  929 F.3d 186 (4th Cir. 2019) ................................................................ 7, 9, 10

*United States v. Hillie*,
  39 F.4th 674 (2022) ............................................................................... 6, 7, 8, 9

*United States v. Knox*,
  32 F.3d 733 (3d Cir. 1994) ...............................................................................2

*United States v. Palmer*,
  820 F.3d 640 (4th Cir. 2016) ............................................................................2

*United States v. Palomino-Coronado*,
   805 F.3d 127 (4th Cir. 2015*)* ................................................................................13

*United States v. Thirty-Seven Photographs*,
   402 U.S. 363 (1971) ........................................................................................7, 12

*United States v. Turkette*,
   452 U.S. 576 (1981) ................................................................................................3

*United States v. Venable*,
   2019 U.S. App. LEXIS __ (4th Cir. Nov. 20, 2019) .................................................3

*United States v. Williams*,
   553 U.S. 285 (2008) ................................................................................... *passim*

*United States v. X-Citement Video*, *Inc.*,
   513 U.S. 64 (1994) .................................................................................................6

**Statutes & Other Authorities:**

18 U.S.C. § 2255 .............................................................................................................9

18 U.S.C. § 2256 .............................................................................................................2

18 U.S.C. § 2256(2)(A) ......................................................................................... 3, 4, 5, 6

18 U.S.C. § 2256(2)(A)(v) ................................................................................................9

# REPLY ISSUES

1. This Court reviews the meaning of the statutory phrases "sexually explicit conduct" and "lascivious exhibition" *de novo*.

2. The images are not "lascivious" within the meaning of the federal child pornography statutes.

3. *Dost* is fatally flawed.

4. *Courtade* is neither precedential nor binding.

## REPLY ISSUES

1. This Court reviews the meaning of the statutory phrases "sexually explicit conduct" and "lascivious exhibition" *de novo*.

2. The images are not "lascivious" within the meaning of the federal child pornography statutes.

3. *Dost* is fatally flawed.

4. *Courtade* is neither precedential nor binding.

I. THIS COURT REVIEWS THE MEANING OF THE STATUTORY PHRASES "SEXUALLY EXPLICIT CONDUCT" AND "LASCIVIOUS EXHIBITION" *DE NOVO*

First and foremost, it is important this Court apply the correct standard of review when considering the specific issues on appeal: the meaning and reach of the statutory phrases "sexually explicit conduct" and "lascivious exhibition".

It is well established that determining the meaning of the statutory phrase "lascivious exhibition" under 18 U.S.C. § 2256 poses a pure question of law over which this Court exercises "plenary" review. *See United States v. Knox*, 32 F.3d 733, 744 (3d Cir. 1994). *See also United States v. Palmer*, 820 F.3d 640, 648 (4th Cir. 2016). Only after the Court has determined the legal meaning of these statutory phrases can the Court make any necessary factual determinations as to whether an image is or is not violative of the relevant statutes. In other words, this is not an appeal from a question of fact which this Court must view in the light most favorable to the government; this appeal is entirely about the proper meaning and understanding of the statutory phrases "sexually explicit conduct" and "lascivious exhibition", within the context of the federal child pornography statutes, which this Court reviews *de novo*.

2

II. THE IMAGES ARE NOT "LASCIVIOUS" WITHIN THE MEANING OF CHILD PORNOGRAPHY STATUTES

    A. <u>The Court must begin with the plain language of 18 U.S.C. § 2256(2)(A)</u>

"[W]hen interpreting a statute, we begin with the plain language." *In re Total Realty Mgmt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013); *see also United States v. Venable*, 2019 U.S. App. LEXIS (4th Cir. Nov. 20, 2019) ("our conclusion flows directly from the plain language of the relevant statutes"). In doing so, Court must give terms "their ordinary, contemporary, common meaning, absent an indication Congress intended [it] to bear some different import." *Crespo v. Holder*, 631 F.3d 130, 133 (4th Cir. 2011) (citation omitted). "If the plain language is unambiguous, we need look no further." *See United States v. Turkette*, 452 U.S. 576, 580 (1981) (court must accord words of statute their common and ordinary meaning unless ambiguous); *Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 631 (4th Cir. 2015) (citation omitted).

    B. <u>Elements Of The Offenses</u>

For each of the indicted charges, the government was required to prove, among other things, that the images involved the use of a minor engaged in "sexually explicit conduct".

    18 U.S.C. § 2256(2)(A) defines sexually explicit conduct as follows:

    "sexually explicit conduct" means actual or simulated—

3

      (i)    sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

      (ii)    bestiality;

      (iii)    masturbation;

      (iv)    sadistic or masochistic abuse; or

      (v)    lascivious exhibition of the anus, genitals, or pubic area of any person.

As the evidence showed- and this Court has now seen- none the images at issue depict actual or simulated sexual intercourse, bestiality, masturbation, or sadistic or masochistic abuse. Accordingly, part (v) of the relevant definition- "lascivious exhibition of the anus, genitals, or pubic area"- is the only definition which could possibly apply to the facts of this case.

    C.    <u>The plain language of 18 U.S.C. § 2256(2)(A) is clear and unambiguous</u>

As an initial matter, the Court must recognize what the statute does *not* proscribe. The statute does not proscribe images *the producer intends to be* lascivious exhibitions of the anus, genitals, or pubic area; similarly, the statute does not proscribe images a theoretical viewer *could find to be* lascivious exhibitions of the anus, genitals, or pubic area. By the plain language of the statute, the proscription is only against the production, distribution, receipt and possession of images that *are* lascivious exhibitions of the anus, genitals, or pubic area. By the very terms of the

4

statute, therefore, the critical inquiry in this appeal is limited to the nature and substance of the images themselves.

Accordingly, whether an image is or is not "lascivious" must be determined objectively- separate and apart- from any consideration of the subjective perspectives or intents of the producer, distributor, possessor, or viewer.

> D. <u>The statutory term "lascivious exhibition" refers to the content of the visual depiction, not how that visual depiction is viewed or intended to be perceived</u>

This objective approach to understanding the statute is in fact completely consistent with how the Supreme Court has instructed lower courts to interpret the statute. Indeed, Justice Scalia made exactly this point when writing for the Court in *Williams*:

> ". . . the Eleventh Circuit also thought that the statute could apply to someone who subjectively believes that an innocuous picture of a child is "lascivious." (Clause (v) of the definition of "sexually explicit conduct" is "lascivious exhibition of the genitals or pubic area of any person." § 2256 (2)(A) (2000 ed., Supp. V)) That is not so. The defendant must believe that the picture contains certain material, and that material in fact (and not merely in his estimation) must meet the statutory definition. Where the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that it constitutes a "lascivious exhibition of the genitals," the statute has no application."

*United States v. Williams*, 553 U.S. 285, 301 (2008).

Thus, the statute has no application to an image because the viewer subjectively believes the image constitutes a "lascivious exhibition of the genitals."

5

*Id.* Moreover, the statute has no application to an image because the producer believes and intends the image to be "lascivious". *Id.* The image, judged on its own terms, either "is" or "is not" lascivious; therefore, despite the government's insistence to the contrary, the Court's determination in this appeal cannot rely upon – or even consider – where the images were posted, what was said about them, Ms. Kolhoff's intention in creating them, or viewer reactions to them (*See* Gov't Response at 13-14). Those subjective considerations are simply outside the proper scope of this Court's inquiry into the objective nature and substance of the images.

    E.    <u>To be "lascivious" within the child pornography statutes, the video or image must depict the minor engaging in *some* sort of sexual conduct</u>

How, then, to objectively determine whether an image is, or is not, "lascivious" within the meaning of the federal child pornography statutes? Drawing on nearly 50 years of Supreme Court jurisprudence- from *Miller v. California*, 413 U.S. 15 (1973) through *United States v. 12 200-Foot Reels of Super 8mm*, 413 U.S. 123 (1973), *New York v. Ferber*, 458 U.S. 747 (1982), *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) and *Williams supra*- the DC Circuit Court of Appeals in *United States v Hillie*, 39 F.4th 674 (2022) arrived at the inescapable conclusion that to be objectively "lascivious" within the meaning 18 U.S.C. § 2256(2)(A), the "exhibition of the anus, genitals, or pubic area" must be performed in a manner that connotes the commission of *some* sexual act, either actual or simulated. *See Hillie* at

6

685. Mere nudity, as we have in this case, is simply not enough. *See also United States v. Courtade*, 929 F.3d 186, 191 (4th Cir. 2019).

This is hardly revolutionary. Writing for the Court in *Williams*, Justice Scalia reached this exact conclusion about the proper understanding of the statute's prohibitions when he opined that the phrase "sexually explicit conduct", by its very nature, connotes the actual or simulated depiction of some sex act:

> "Sexually *explicit* conduct" connotes the actual depiction of the sex act rather than merely the suggestion that it is occurring. And "simulated" sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera"

*Williams* at 297.

Moreover, the litany of previous Supreme Court opinions in this area makes it unambiguously clear that equating "lascivious" with an actual or simulated sex act is all that protects that portion of the statute from being void for vagueness. *See United States v. Thirty-Seven Photographs*, 402 U.S. 363, 369 (1971) (opinion of White, J.)) ("[i]f and when such a 'serious doubt' is raised as to the vagueness of the words 'obscene,' 'lewd,' 'lascivious,' 'filthy,' 'indecent,' or 'immoral' as used to describe regulated material" in federal statutes, "we are prepared to construe such terms as limiting regulated material to patently offensive representations or

7

descriptions of that specific '*hard core* ' *sexual conduct* given as examples in *Miller v. California*).

Accordingly, to be "lascivious" within the context of the federal child pornography statutes, the image must depict some sort of sexual conduct, either actual or simulated. Any other reading of "lascivious" would necessarily lead to widely divergent applications between and among individuals, rendering the statute unconstitutionally vague both because it would fail to enable ordinary people to understand what conduct it prohibits while also authorizing and even encouraging arbitrary and discriminatory enforcement. *See City of Chicago v. Morales*, 527 U.S. 41, 56 (1999). *See also Williams* at 306 ("Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.")

### III.    *DOST* IS FATALLY FLAWED

The brilliance of the *Hillie* opinion is found not just in the clarity with which it unravels the meaning of "lascivious" within the context of the federal child pornography statutes but also the manner in which it dismantles and delegitimizes the so-called *Dost* factors.

8

As *Hillie* conclusively demonstrates, the *Dost* court:

- fundamentally misinterpreted a single floor statement of a single Senator when Congress amended the definition of "sexually explicit conduct" in 1984 by substituting "lascivious" for "lewd";

- completely ignored the holdings of *Miller*, 413 U.S. at 27, and *12 200-Foot Reels of Super 8mm. Film*, 413 U.S. at 130 n.7, instead crafting its own definition that was at odds with this Supreme Court jurisprudence; and

- erroneously concluded that whether a photo or video depicts "a minor engaged in sexually explicit activity" depends in part on whether the photo or video "is designed to elicit a sexual response in the viewer, albeit perhaps not the 'average viewer,' but perhaps in the pedophile viewer." 636 F. Supp. at 832.

-

*See Hillie* at 687-88.

*Dost*, in other words, was fatally flawed from the outset, and remains so, despite whatever purchase it may have secured with other courts.

IV.    *COURTADE* IS NEITHER PRECEDENTIAL NOR BINDING

*United States v Courtade*, 929 F.3d 186 (4th Cir. 2019) is the only Fourth Circuit case addressing the meaning of "lascivious exhibition of the anus, genitals, or pubic area of any person" in 18 U.S.C. § 2256(2)(A)(v). However, it is important to recognize that the Fourth Circuit Panel analyzed this question only in a civil proceeding and only in the context of a § 2255 habeas claim of actual innocence. It specifically did not address this question in the criminal context based on a claim of legal insufficiency. *See Courtade* at 191 (Actual innocence "means factual innocence, not mere legal insufficiency") (citing *Bousley v. United States*, 523 U.S.

9

614, 623 (1998)). *See also House v. Bell*, 547 U.S. 518, 53 (2006) (emphasizing that establishing factual innocence- rather than legal insufficiency - is a far more demanding standard that is seldom ever met).

Moreover, the *Courtade* panel improperly relied upon- at least in part- the *Dost* factors in concluding that the question of "lasciviousness" concerned whether the images depict the minor displaying their anus, genitalia, or pubic area in a manner that "excites lustfulness or sexual stimulation" in a reasonable person. *Courtade* at 192. As has been set forth above, however, this is not the proper inquiry. Justice Scalia and the *Williams* Court made it clear that the statute does not apply to someone because the images subjectively excite in them a feeling of "lustfulness or sexual stimulation" or because a particular defendant happens to believe the images constitute a "lascivious exhibition of the genitals." *See Williams*, 553 U.S. at 301. In short, it is the image itself- not the viewer's perspective or the producer's intent- that determines whether it an image is -or is not- "lascivious".

So, while *Courtade* may have some applicability when determining the legitimacy of a habeas claim based on "actual innocence", it has no applicability to the instant case, where the question is one of legal insufficiency. It is therefore neither binding on this Court nor precedential for this appeal, despite the government's insistence to the contrary.

10

CONCLUSION

As the Court has now seen, the images in question depict mere nudity and are completely devoid of any suggestion of any sexual conduct. Specifically, there is no actual or simulated sexual conduct of any kind, and the only digital manipulation is that which is required to observe the body parts. As set forth in our Opening Brief and in this Reply, these images therefore are not violative of the federal child pornography statutes, though they may in fact form the basis of state charges for related conduct.

Nevertheless, the government insists these images are "plainly lascivious", despite the obvious absence of any sexual conduct whatsoever, simply because "they clearly depict an adult spreading apart an infant's labia and anus in order to better display, and enhance the focus on, the victim's genitals." (Gov't Brief at 17).

According to the government, then, this is all that is required- an adult spreading apart an infant's labia and anus in order to better display, and enhance the focus on, the genitals- and any image depicting such conduct is, by definition, child pornography. It is difficult to think of a more dangerously pernicious expansion of the federal child pornography statutes than this.

Imagine, just for a moment, that Ms. Kolhoff had taken the identical images- complete with the digital manipulation of the labia and anus- and sent them to a pediatrician as part of an online medical consult to aid in the diagnosis of diaper

11

rash, yeast infection or urinary tract infection. And further imagine the pediatrician then forwarded those images onto a colleague for a second opinion. In those circumstances, would Ms. Kolhoff be guilty of production of child pornography, the forwarding pediatrician guilty of distribution of child pornography, and the receiving pediatrician guilty of receipt? To ask is to answer, yet this is the future the government is asking this Court to bless and embrace: the identical images yielding impermissibly random, inconsistent, and counterintuitive applications of the law, just as Justice White forwarned in *Thirty-Seven Photographs supra.*

As the Supreme Court has made abundantly clear, whether an image is deemed "lascivious" within the meaning of the federal child pornography statutes is not- and cannot be- a subjective inquiry into what may or may not have been in someone's mind when they viewed it, created it, posted it, or described it. Whether an image is or is not "lascivious" cannot be a function of to whom or to where the images were distributed. An image either is- or is not- "lascivious", whether it's posted in online forum or sent to a pediatrician.

In short, if these images would not support a conviction if Ms. Kolhoff sent them to a pediatrician, they cannot support a conviction here.

Finally, finding the statute has no application to the images in question is a feature of the federal system, not a flaw. Congress tailored these statutes so that they would apply only to the worst and most serious cases: the hardcore pornographers;

12

the commercial producers of child pornography; the organizations and actors that cross state lines and make local prosecutions extremely difficult. That's why the penalties are so extreme; that's why the statutes must be read narrowly. Indeed, if there is one underlying theme to the Fourth Circuit decisions in *United States v. Palomino-Coronado*, 805 F.3d 127 (4th Cir. 2015*)* and *United v. McCauley*, 983 F.3d 690, (4th Cir. 2020) it is this Court's concern with the inappropriate federalization of child pornography prosecutions by the stretching of these statutes to their absolute limits.

In this case, there were- and are- no jurisdictional issues, evidentiary problems, or legal loopholes preventing Ms. Kolhoff's prosecution in Sandusky, Ohio by the local authorities for violating local laws. Similarly, there were and are no witness issues and no associated federal crimes deserving of simultaneous prosecution. Federal jurisdiction was based entirely on the fact that the images were found on a computer server that happened to be Culpepper, Virginia- but that is hardly a compelling federal interest.

There are, and need to be, limits on the federalization of state crime and a narrow reading of these statutes recognizes these limits and reflects their proper focus and intent. These images are nowhere close to the heartland of the statute's proscriptions and this Court must view their application to the relevant statutes with the utmost caution. *McCauley*, 983 F.3d at 698 (When charged conduct does not fall

13

CERTIFICATE OF COMPLIANCE

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [2,950] words.

    [ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: March 20, 2023                    /s/ Christopher Amolsch
                                         *Counsel for Appellant*

CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 20th day of March, 2023, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Jessica D. Aber
OFFICE OF THE U.S. ATTORNEY
919 East Main Street
Richmond, Virginia  23219
(804) 819-5400

Jacqueline R. Bechara
Seth M. Schlessinger
OFFICE OF THE U.S. ATTORNEY
2100 Jamieson Avenue
Alexandria, Virginia  22314
(703) 299-3700

*Counsel for Appellee*

/s/ Christopher Amolsch
*Counsel for Appellant*